JARED L. PALMER, CA Bar No. 287974
jared.palmer@ogletree.com
CAROLYN B. HALL, CA Bar No. 212311
carolyn.hall@ogletree.com
ETHAN LAI, CA Bar No. 347130
ethan.lai@ogletree.com
OGLETREE, DEAKINS, NASH, SMOAK &
STEWART, P.C.
One Embarcadero Center, Suite 900
San Francisco, CA  94111
Telephone:     415-442-4810
Facsimile:     415-442-4870

RICARDO R. BOURS, CA Bar No. 325020
ricardo.bours@ogletree.com
OGLETREE, DEAKINS, NASH, SMOAK &
STEWART, P.C.
Esplanade Center III, Suite 800
2415 East Camelback Road
Phoenix, AZ  85016
Telephone:     602-778-3700
Facsimile:     602-778-3750

Attorneys for Defendant
APL LOGISTICS WAREHOUSE
MANAGEMENT SERVICES, INC.

## UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANTHONY PADILLA, individually, and on behalf of other members of the general public similarly situated,<br><br>        Plaintiffs,<br><br>    v.<br><br>APL LOGISTICS AMERICAS, LTD., a California corporation; APL LOGISTICS WAREHOUSE MANAGEMENT SERVICES, INC., a Florida corporation; CARMICHAEL INTERNATIONAL SERVICE, a California corporation; APL LOGISTICS GROUP, an unknown business entity; APL LOGISTICS LTD., an unknown business entity; and DOES 1 through 100, inclusive,<br><br>        Defendants. | Case No.<br><br>**NOTICE OF REMOVAL OF CIVIL ACTION TO FEDERAL COURT**<br><br>[28 U.S.C. §§ 1332, 1441, 1446, & 1453 (Class Action Fairness Act)]<br><br>[*Filed concurrently with Civil Cover Sheet; Corporate Disclosure Statement; Related Cases; Declaration of Jared L. Palmer in Support of Notice of Removal; Declaration of Hyowook Chiang, Ph.D.; Declaration of Phillip Dearth; Declaration of Carisa Ciotti*]<br><br>Complaint Filed:  April 25, 2024 |

Case No.

DEFENDANT APL LOGISTICS WAREHOUSE MANAGEMENT SERVICES, INC.'S NOTICE OF REMOVAL OF CIVIL ACTION TO FEDERAL COURT

**TO THE CLERK OF THE ABOVE-ENTITLED COURT AND TO PLAINTIFF AND HIS COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE** that defendant APL Logistics Warehouse Management Services, Inc. ("Defendant" or "APLL WMS") removes this action from the Superior Court of the State of California for the County of San Joaquin to the United States District Court for the Eastern District of California, pursuant to 28 U.S.C. § 1332, 1441, 1446, and 1453. As discussed below, this Court has original jurisdiction over this matter pursuant to the Class Action Fairness Act ("CAFA"). In support of such removal, Defendant states as follows:

**I.    THE STATE COURT ACTION**

1.    On April 25, 2024, plaintiff Anthony Padilla ("Plaintiff") filed his unverified Complaint ("Complaint") in the Superior Court of the State of California for the County of San Joaquin ("State Court Action" or "Action"), Case No. STK-CV-UOE-2024-0005009. (Declaration of Jared L. Palmer ("Palmer Decl."), ¶ 2.)  The Action asserts claims for: (1) Failure to Pay Overtime Wages (California Labor Code §§ 510, 1198); (2) Failure to Provide Meal Periods or Pay Meal Period Premiums (California Labor Code § 226.7 and 512(a)); (3) Failure to Permit Rest Periods or Pay Rest Period Premiums (California Labor Code § 226.7); (4) Failure to Pay Minimum Wages (California Labor Code §§ 1194, 1197, and 1197.1); (5) Waiting Time Penalties (California Labor Code §§ 201-203); (6) Failure to Timely Pay Wages During Employment (California Labor Code § 204); (7) Knowing and Intentional Failure to Provide Accurate Itemized Wage Statements (California Labor Code § 226(a)); (8) Failure To Keep Requisite Payroll Records (California Labor Code §1174(d)); (9) Failure to Reimburse Business Expenses (California Labor Code §§ 2800 and 2802); and (10) Violations of the Unfair Competition Law (California Business & Professions Code § 17200 et seq.). A true and correct copy of the Complaint is attached as **Exhibit A** to this Notice of Removal. (*See also*, Palmer Decl. ¶ 2.)

2.    On June 20, 2024, Defendant accepted service of the Complaint pursuant to California Code of Civil Procedure section 415.30(c) by executing a Notice and Acknowledgment of Receipt and returning it to Plaintiff. A true and correct copy of the Notice and Acknowledgment of Receipt is attached as **Exhibit B** to this Notice of Removal.

DEFENDANT APL LOGISTICS WAREHOUSE MANAGEMENT SERVICES, INC.'S NOTICE OF REMOVAL OF CIVIL ACTION TO FEDERAL COURT

3.       On August 21, 2024, Defendant filed an Answer to Plaintiff's Complaint in the State Court Action. A true and correct copy of Defendant's Answer is attached as **Exhibit C** to this Notice of Removal. (Palmer Decl. ¶ 4.)

4.       On July 27, 2024, Plaintiff filed a request for dismissal as to named defendants APL Logistics Americas, Ltd., Carmichael International Service, APL Logistics Group and APL Logistics Ltd. on the grounds that each was an improperly named defendant. On July 30, 2024, the San Joaquin County Superior Court issued an order dismissing each such defendant without prejudice. (Palmer Decl. ¶ 5.) A true and correct copy of the order is included in **Exhibit D** to this Notice of Removal.

5.       As required by 28 U.S.C. § 1446(a), Defendant hereby provides this Notice with copies of all process, pleadings, and orders received by Defendant in this action.  True and correct copies of these documents are attached as **Exhibit D** to this Notice of Removal.  Defendant has not been served with any pleadings, process, or orders besides those attached.  (Palmer Decl. ¶ 6.)

6.       Plaintiff has not yet identified any of the fictitious "Doe" defendants referenced in the Complaint, and the citizenship of "Doe" defendants is disregarded for the purposes of removal. 28 U.S.C. § 1441(a); *McCabe v. General Foods Corp.*, 811 F.2d 1336, 1339 (9th Cir. 1987).

## II.     REMOVAL IS TIMELY

7.       Pursuant to 28 U.S.C. section 1446(b)(1), "the notice of removal of a civil action or proceeding shall be filed within 30 days after receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based…"

8.       The time to remove under 28 U.S.C. section 1446(b) does not begin to run until receipt by the Defendants, through service or otherwise, of a pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable. *Harris v. Bankers Life & Cas. Co.*, 425 F.3d 689, 694 (9th Cir. 2005). Defendants are not obligated to investigate or develop additional facts as to removability upon receipt of the Complaint. *Id.* ("[N]otice of removability…is determined through examination of the four corners of the applicable pleadings, *not* through subjective knowledge or a duty to make further inquiry" by Defendant.).

9.       The Ninth Circuit has repeatedly upheld the *Harris* decision in subsequent cases. In

DEFENDANT APL LOGISTICS WAREHOUSE MANAGEMENT SERVICES, INC.'S NOTICE OF REMOVAL
OF CIVIL ACTION TO FEDERAL COURT

*Kuxhausen v. BMW Fin. Servs. NA LLC*, 707 F.3d 1136 (9th Cir. 2013), the Ninth Circuit emphasized that defendants are not "saddl[ed] with the burden of investigating jurisdictional facts" as to removability. In *Roth v. CHA Hollywood Medical Center, L.P.*, 720 F.3d 1121, 1125 (9th Cir. 2013), the Court explained that when defendants *do* conduct such an investigation, 28 U.S.C. §§ 1441 and 1446, "read together, permit a defendant to remove outside the two thirty-day periods on the basis of its own information." Any argument that defendants could have removed a case earlier based on information contained within its own records fails.

10.    Here, the four corners of the Complaint do not provide readily ascertainable grounds for removal. The Complaint does not allege sufficient facts to calculate the amount in controversy with reasonable certainty as to the individually named plaintiff or as to the putative class.

11.    The Complaint does not provide an estimate as to the number of putative class members, their average hourly rate of pay, the frequency of alleged violations of the California Labor Code, nor estimates as to Plaintiff's own experiences. *See*, Complaint, *passim.* Accordingly, the time to remove has not yet begun and Defendant may remove based upon its own investigation. *Harris, supra,* 425 F.3d at 694.

## III.    REMOVAL IS PROPER UNDER CAFA

12.    The Action is removable under CAFA given the allegations and claims. CAFA grants district courts original jurisdiction over civil class action lawsuits filed under federal or state law in which any member of a class of plaintiffs is a citizen of a state different from any defendant; the number of members of all proposed plaintiff classes in the aggregate is over 100; and where the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interests and costs. 28 U.S.C. § 1332(d). CAFA authorizes removal of such actions under 28 U.S.C. § 1446.

### B.    CAFA's Minimal Diversity of Citizenship Requirement Is Satisfied

13.    CAFA's diversity requirement is satisfied when at least one plaintiff is a citizen of a state in which none of the defendants are citizens. 28 U.S.C. §§ 1332(d)(2), 1332(d)(5)(B), 1453(a), (b); *Rodgers v. Central Locating Service, Ltd*., 412 F. Supp. 2d 1171, 1174-79 (W.D. WA. 2006).

14.    Defendant is informed and believes that at all relevant times, Plaintiff was, at the time of the filing of the Action, and still is, a resident of the State of California. (Complaint ¶ 5.) Members

DEFENDANT APL LOGISTICS WAREHOUSE MANAGEMENT SERVICES, INC.'S NOTICE OF REMOVAL OF CIVIL ACTION TO FEDERAL COURT

of the putative class, who are or were employed in California, are presumed to be primarily citizens of the State of California. Indeed, Plaintiff specifically alleges that members of the proposed class includes "[a]ll current and former hourly-paid or non-exempt employees who worked for any of the Defendants within the State of California at any time during the period from four years preceding the filing of th[e] Complaint to final judgment and who reside in California." (*Id.* at ¶ 17.)

15. For diversity purposes, a person is a "citizen" of the state in which he is domiciled. *Kantor v. Wellesley Galleries, Ltd.*, 704 F.2d 1088, 1090 (9th Cir. 1983).

16. Further, the members of Plaintiff's proposed class, who by definition are or were employed in California, are presumed to be primarily citizens of the State of California. *See, e.g.*, *Lew v. Moss*, 797 F.2d 747, 750 (9th Cir. 1986) ("place of employment" an important factor weighing in favor of citizenship). Thus, even if Plaintiff was somehow a citizen of the same states as Defendant (and there is no evidence that he is), there is no possible way that the hundreds of putative class members, all of whom "work" or "worked" in California, were also citizens of the same states as Defendants.

17. Pursuant to 28 U.S.C. § 1332(c), "a corporation shall be deemed to be a citizen of any State by which it has been incorporated and of the State where it has its principal place of business." The Supreme Court established the proper test for determining the principal place of business of a corporation for purposes of diversity jurisdiction. *See Hertz Corp. v. Friend*, 130 S. Ct. 1181 (2010). The Court held that "'principal place of business' [as contained in section 1332(c)] is best read as referring to the place where a corporation's officers direct, control, and coordinate the corporation's activities." *Id*. at 1184, 1192. The Court further clarified that the principal place of business was the place where the corporation "maintains its headquarters – provided that the headquarters is the actual center of direction, control and coordination." *Id*. A company's "'principal place of business' refers to the corporation's "nerve center." *Id*. at 1192. The "nerve center" is normally where the corporation maintains its headquarters. *Id.; see also Davis v. HSBC Bank Nevada, N.A.*, 557 F.3d 1026 (9th Cir. 2009) (stating that an unincorporated association is a citizen of (1) the state under whose laws it is organized or incorporated; and (2) the state of its "principal place of business," with the state of the principal place of business being where a substantial predominance of corporate operations occur or

DEFENDANT APL LOGISTICS WAREHOUSE MANAGEMENT SERVICES, INC.'S NOTICE OF REMOVAL OF CIVIL ACTION TO FEDERAL COURT

where the majority of the partnership's executive and administrative functions are performed).

18.     At all relevant times, Defendant has been incorporated under the laws of Florida with its principal place of business in Arizona. (Declaration of Philip Dearth ("Dearth Decl."), ¶ 3.) At all relevant times, Defendant has not been organized or incorporated under the laws of California or had its principal place of business there. (*Id*.) Defendant does business in a number of states and does not conduct the substantial predominance of its business in any single state. (*Id*.) As such, Defendant's principal place of business is in Scottsdale, Arizona, where its corporate headquarters are located and where its high-level corporate officers, who are responsible for the direction, control, and coordination of its activities, are located or based. (*Id*.) Therefore, at all relevant times, APLL WMS has been a citizen of Florida and Arizona but not California.

19.     Based on the foregoing, minimal diversity is established because, at all relevant times, Plaintiff has been a citizen of California, and the removing Defendant is not a citizen of California.

**C.     CAFA's Class Size Requirement Is Satisfied**

20.     In the Complaint, Plaintiff defines the proposed "Class" as: "All current and former hourly-paid or non-exempt employees who worked for any of the Defendants within the State of California at any time during the period from four years preceding the filing of this Complaint to final judgment and who reside in California." (Complaint ¶ 17.) The proposed class period, therefore, runs from April 25, 2020 through the date of final judgment. Plaintiff brings these claims pursuant to California's class action statute, California Code of Civil Procedure section 382 (*Id*. ¶ 16), and alleges that "[t]he class is ascertainable and there is a well-defined community of interest in the litigation." (*Id*. ¶ 19.)

21.     From April 25, 2020 to the present, APLL WMS had more than 100 hourly non-exempt employees in California. (Declaration of Carisa Ciotti ("Ciotti Decl.), ¶ 8.)

22.     Defendant's employment records show that there are at least 784 current and former employees who fall within Plaintiff's proposed "Class." Ciotti Decl., ¶ 8; Declaration of Hyowook Chiang, Ph.D. ("Chiang Decl."), ¶ 7.)

23.     Accordingly, while Defendant denies that class treatment is permissible or appropriate, the proposed class consists of well over 100 members.

DEFENDANT APL LOGISTICS WAREHOUSE MANAGEMENT SERVICES, INC.'S NOTICE OF REMOVAL OF CIVIL ACTION TO FEDERAL COURT

24.     Thus, CAFA's size requirement is satisfied, and this is a putative class action pursuant to 28 U.S.C. § 1332(d).

**D.     CAFA's Requisite Amount in Controversy Is Satisfied**

25.     Plaintiff has not alleged a specific amount in controversy in the Com-plaint. In order to remove a class action pursuant to CAFA, the amount in controversy must exceed $5,000,000, and it is the removing party's burden to establish "by a preponderance of evidence, that the aggregate amount in controversy exceeds the jurisdictional minimum." *Rodriguez v. AT&T Mobility Servs. LLC*, 728 F.3d 975, 981 (9th Cir. 2013). To do so, the removing defendant must "produce underlying facts showing only that it is more likely than not that the amount in controversy exceeds $5,000,000.00, assuming the truth of the allegations plead in the Complaint." *Muniz v. Pilot Travel Ctrs. LLC*, No. CIV. S-07-0325 FCD EFB, 2007 WL 1302504, at *5 (E.D. Cal. May 1, 2007) (emphasis in original).

26.     In considering the evidence submitted by the removing defendant, the Court must "look beyond the complaint to determine whether the putative class action meets the [amount in controversy] requirements" by adding "the potential claims of the absent class members." *Rodriguez*, 728 F.3d at 981 (citing *Standard Fire Ins. Co. v. Knowles*, 133 S.Ct. 1345, 185 L.Ed. 2d 439 (2013)); *Guglielmino v. McKee Foods Corp.*, 506 F.3d 696, 705 (9th Cir. 2007). Furthermore, "[i]n considering whether the amount in controversy is clear from the face of the complaint, a court must assume that the allegations of the complaint are true and that a jury will return a verdict for the plaintiff on all claims made in the complaint." *Altamirano v. Shaw Indus., Inc.*, C-13-0939 EMC, 2013 WL 2950600, at *4 (N.D. Cal. June 14, 2013) (citing *Korn v. Polo Ralph Lauren Corp.*, 536 F. Supp. 2d 1199, 1205 (E.D. Cal. 2008)); *see also Muniz*, 2007 WL 1302504, at *3.

27.     While Defendant denies the validity of Plaintiff's claims and requests for relief and does not concede in any way that the allegations in the Complaint are accurate, that Plaintiff's claims are amenable to classwide treatment, or that Plaintiff or the purported class are entitled to any of the requested relief, the allegations in the Complaint show it is more likely than not that the amount in controversy exceeds the jurisdictional minimum. *See Guglielmino*, 506 F.3d at 700.

28.     As described further below, the amount in controversy exceeds the jurisdictional

Case No.

DEFENDANT APL LOGISTICS WAREHOUSE MANAGEMENT SERVICES, INC.'S NOTICE OF REMOVAL OF CIVIL ACTION TO FEDERAL COURT

minimum of $5,000,000. Notably, even if the Court limits its review to just the overtime, meal period and rest break claims, wage statement claims, untimely pay claims and waiting time penalties, and restricts itself to extremely conservative assumptions, Plaintiff has still placed more than $5,000,000 in controversy.

### 1.     Claims Considered

29.     In determining the amount in controversy to support its Notice of Removal, Defendant applies a reasonable violation rate based only on damages sought by Plaintiff as a result of the alleged: (1) failure to pay minimum wages; (2) failure to pay overtime; (3) failure to provide compliant meal periods; (4) failure to authorize and permit compliant rest periods; (5) failure to timely pay wages during employment, (6) waiting time penalties for final wages; and (7) attorneys' fees. Because the amounts in controversy for these claims alone satisfy the jurisdictional minimum requirement of $5 million, Defendant does not include additional amounts placed in controversy by Plaintiff's causes of action for failure to keep requisite payroll records, failure to reimburse business expenses or the liquidated damages sought in the Complaint. That said, Defendant reserves the right to do so in opposition to any remand motion.

### 2.     Minimum Wage Claim

30.     In his Fourth Cause of Action, Plaintiff alleges that Defendants failed to pay him and putative class members minimum wages. (Complaint ¶¶ 84-89.) Plaintiff contends that "Defendants engaged in a pattern and practice of wage abuse against their hourly-paid or non-exempt employees within the State of California . . . [t]his pattern and practice involved [ ] failing to pay them for all regular wages [ ] earned." (*Id*. ¶ 29.) Plaintiff also seeks "liquidated damages in an amount equal to the wages unlawfully unpaid." (*Id*. ¶ 89.) Plaintiff specifically alleges the following with respect to his claims that Defendants failed to pay overtime wages:

- "During the relevant time period, Defendants failed to pay minimum wage to Plaintiff and the other class members." (*Id*. ¶ 86.)
- "Plaintiff and the other class members are entitled to recover the unpaid balance of their minimum wage compensation [ ] and liquidated damages in an amount equal to the wages unlawfully unpaid." (*Id*. ¶ 89.)

7                                    Case No.

31.    Labor Code Section 1194(a) provides:

> Notwithstanding any agreement to work for a lesser wage, any employee receiving less than the legal minimum wage or the legal overtime compensation applicable to the employee is entitled to recover in a civil action the unpaid balance of the full amount of this minimum wage or overtime compensation, including interest thereon, reasonable attorney's fees, and costs of suit.

32.    Based on a review of Defendant's business records, putative class members worked an aggregate of at least 273,167 shifts between April 25, 2020 and April 28, 2024. (Chiang Decl., ¶ 7.) The average duration of these shifts is 8.67 hours. (*Id.* ¶ 9, fn. 2.) The average base hourly rate of the putative class members during this period was $19.96. (*Id.* ¶ 7.) Plaintiff's base hourly rate as of January 2023 was $21.00. (Ciotti Decl., ¶ 7.)

33.    Defendant conservatively estimates that the amount placed into controversy by Plaintiff's claim for unpaid minimum wages is at least $908,736 (0.167 hours x 273,167 shifts x $19.75). The computation of the amount in controversy is based on a conservative estimate of 10 minutes of "off the clock" work per shift for the 273,167 shifts at the average base hourly rate of the putative class members. (Chiang Decl., ¶ 17.)

34.    Courts have accepted an estimate of one hour of unpaid wages for every workweek as a reasonable and conservative figure. *See Kincaid v. Educ. Credit Mgmt. Corp.*, No. 2:21-CV-00863-TLN-JDP, 2022 WL 597158, at *3 (E.D. Cal. Feb. 28, 2022) (finding assumption of one hour of unpaid minimum wage per week was reasonable given the Complaint's lack of specific allegations to the contrary); *Kastler v. Oh My Green, Inc.*, No. 19-cv-02411-HSG, 2019 WL 5536198, at *4 (N.D. Cal. 25, 2019) (stating that an assumption of one hour of unpaid minimum wage per week was a "conservative estimate routinely endorsed by courts in evaluating CAFA's amount in controversy requirement when plaintiff fails to include specific allegations"); *Soto v. Tech Packaging, Inc.*, No. ED CV 19-1766-MWF (SHKx), 2019 WL 6492245, at *5 (C.D. Cal. Dec. 3, 2019) (finding reasonable Defendant's assumption that the class members were not compensated for one hour of minimum wages per week where plaintiff alleged a "pattern and practice" of wage abuse); *Soto v. Greif Packaging, LLC*, No. SACV 17-2104 JVS (JDEx), 2018 WL 12244525, at *3 (C.D. Cal. Mar. 8, 2018) (finding allegation that defendant failed to pay minimum wage for all hours worked on a

"consistent and regular basis" sufficient to support estimate of one hour per week per class member); *Patel v. Nike Retail Servs.*, 58 F. Supp. 3d 1032, 1042 (N.D. Cal. 2014) (approving one hour of unpaid wages "to be appropriately considered toward the amount in controversy"). This is especially the case where, as here, the Plaintiff fails to provide specific allegations concerning the frequency of which he worked unpaid wages without being provided the requisite compensation. *See Byrd v. Masonite Corp.*, No. EDCV 16-35 JGB (KKX), 2016 WL 2593912, at \*5 (C.D. Cal. May 5, 2016). Here, Defendant conservatively estimates alleged unpaid minimum wages based on 10 minutes per shift rather than one hour.

35.    Defendant denies that any such minimum wages are owed to Plaintiff or putative class members. However, for purposes of this jurisdictional analysis only, Defendant relies on Plaintiff's allegations that the minimum wages are owed.

36.    **Consequently, the amount placed in controversy by Plaintiff's minimum wage claim is at least $908,736**.

### 3.    Overtime Claim

37.    In his First Cause of Action, Plaintiff alleges that Defendants failed to accurately pay overtime wages to him and to putative class members. (Complaint ¶¶ 55-63.) Plaintiff contends that "Defendants engaged in a pattern and practice of wage abuse against their hourly-paid or non-exempt employees within the State of California . . . [t]his pattern and practice involved [ ] failing to pay them for all [ ] overtime wages earned." (*Id*. ¶ 29.) Plaintiff specifically alleges the following with respect to his claims that Defendants failed to pay overtime wages:

- "During the relevant time period, Plaintiff and the other class members worked in excess of eight (8) hours in a day, and/or in excess of forty (40) hours in week, as employees of Defendants." (Complaint ¶ 60.)

- "During the relevant time period, Defendants intentionally and willfully failed to pay overtime wages to Plaintiff and the other class members." (*Id*. ¶ 61.)

- "Defendants failed to use the shift differential pay/commissions/non-discretionary bonuses/non-discretionary performance pay to calculate the regular rate of pay used to calculate the overtime rate for payment of overtime wages." (*Id*. ¶ 31.)

38.     California Labor Code section 510 provides that any work in excess of 8 hours in a workday or 40 hours in a workweek shall be compensated at one and one-half times an employee's regular rate of pay. Lab. Code § 510. Any work a non-exempt employee conducts over 12 hours in one day shall be compensated at the rate of no less than twice the regular rate of pay for an employee. (*Id*.)

39.     Based on a review of Defendant's business records, putative class members worked an aggregate of at least 197,680 shifts eight (8) hours or longer between April 25, 2020 and April 28, 2024. (Chiang Decl. ¶ 18.) The average base hourly rate of the putative class members was $19.96. (Chiang Decl. ¶ 7.) Plaintiff's hourly rate as of January 2023 was $21.00 per hour. (Ciotti Decl. ¶ 7.)

40.     Given Plaintiff's allegations that the putative class members were regularly denied overtime, it is reasonable—and, in fact, conservative—to apply a violation rate of 10 minutes of overtime in every shift lasting 8 hours or longer. Defendant's calculation of the amount in controversy as to Plaintiff's claims for unpaid overtime is $328,808 (10 minutes (= 10/60 minutes) per shift x 197,680 shifts x 0.5 x $19.96 per hour.[1] (Chiang Decl. ¶ 19.)

41.     Defendant's estimate is conservative and reasonable. Where the Complaint does not specify the amount of alleged unpaid overtime worked, courts have found it reasonable to assume one hour of unpaid overtime per week. *Ray v. Wells Fargo Bank, N.A*., 2011 WL 1790123, at **6-7 (C.D. Cal. May 9, 2011) (the defendant's estimates based on one hour of unpaid overtime per class member were conservative and reasonable given allegation of consistent failure to pay overtime); *Stevenson v. Dollar Tree Stores, Inc*., No. CIV S-11-1433 KJM DAD, 2011 WL 4928753, at *4 (E.D. Cal. Oct. 17, 2011) (where it was plaintiff's standard practice not pay "requisite compensation for all hours worked," without more specific allegations to narrow the potential scope of damages, the complaint was not susceptible to precise calculations and defendant's assumptions were thus

---

[1] When calculating the amount in controversy for an overtime wages claim, courts routinely accept the use of average rates of pay. *See, e.g., Vasquez v. RSI Home Products, Inc.*, No. 8:20-cv-01494-JWH-JDEx, 2020 WL 6778772, at *6-7 (C.D. Cal. Nov. 12, 2020) (assumption of 30 minutes of unpaid overtime per week was reasonable based on evidence that class members worked an average 8.61 hours per day);*Hernandez v. Nuco2 Mgmt., LLC*, No. 1:17–cv–01645–LJO–JLT, 2018 WL 933506, at **6-7 (E.D. Cal. Feb. 16, 2018) (holding that "the average wage of class members during the relevant period is an acceptable method on which to base the amount-in-controversy calculation"); *Taylor v. United Rd. Servs., Inc.,* 313 F. Supp. 3d 1161, 1179 (E.D. Cal. 2018) (same).

DEFENDANT APL LOGISTICS WAREHOUSE MANAGEMENT SERVICES, INC.'S NOTICE OF REMOVAL OF CIVIL ACTION TO FEDERAL COURT

reasonable); *Jimenez v. Allstate Ins. Co.*, No. CV 10-8486 AHM (FFMx), 2011 WL 65764, at *3 (C.D. Cal. Jan. 7, 2011) (based on allegation of "consistent" overtime work, the defendant reasonably "estimated one hour of unpaid overtime compensation per week for each putative class member); *Torrez v. Freedom Mortgage Corp.*, 2017 WL 2713400, at *4 (C.D. Cal. Jun, 22, 2017) (finding that assumption of three hours per week was reasonable); *Feao v. UFP Riverside, LLC*, 2017 WL 2836207, at *5 (C.D. Cal. June 29, 2017) (approving defendant's "measured" assumption that "each class member worked only one unpaid hour of overtime and missed only one hour of minimum wage per work week"). Here, Defendant conservatively estimates alleged unpaid overtime based on 10 minutes per shift rather than one hour.

42.    Defendant denies that any such overtime pay is owed to Plaintiff of putative class members. However, for purposes of this jurisdictional analysis only, Defendant relies on Plaintiff's allegations that the overtime pay is owed.

43.    **Consequently, the amount placed in controversy by Plaintiff's overtime claim is at least $328,808**.

### 4.    Meal Period Penalties

44.    In his Second Cause of Action, Plaintiff alleges that Defendants failed to provide Plaintiff and putative class members with meal breaks or premium payment in lieu thereof. (Complaint ¶¶ 64-74.) Generally, Plaintiff contends that "Defendant[] engaged in a pattern and practice of . . . failing to pay [Plaintiff and other putative class members] for . . . missed meal periods." (*Id.* ¶ 29.) Plaintiff specifically alleges "Plaintiff and the other class members . . . were required to work for periods longer than five (5) hours without an uninterrupted meal period of not less than thirty (30) minutes and/or [meal] period." (*Id.* ¶¶ 69-70.) Plaintiff further alleges "Defendant[] intentionally and willfully required Plaintiff and the other class members to work during meal periods and failed to compensate Plaintiff and the other class members the full meal period premium for work performed during meal periods." (*Id.* at ¶ 71.) As such, Plaintiff's allegation is that Defendant engaged in a pattern and practice of failing to pay each member of the putative class with compliant meal periods and meal period premiums.

45.    Under California law, employees who are not provided meal periods are entitled to

one hour of premium pay for each day that a meal period is not provided. *See Marlo v. United Parcel Serv., Inc.*, No. CV 03-04336 DDP, 2009 WL 1258491, at *7 (C.D. Cal. May 5, 2009). Meal period claims are properly considered in determining the amount in controversy. *See, e.g., Muniz*, 2007 WL 1302504, at *4; *Helm v. Alderwoods Grp., Inc.*, No. C 08-01184 SI, 2008 WL 2002511, at *8 (N.D. Cal. May 7, 2008).

46.    When determining the amount placed in controversy by a plaintiff's allegations regarding "widespread" and "systematic" meal period violations like those alleged by Plaintiff in the Complaint, a 20% violation rate that is uniformly applied across all members of the putative class period is both reason-able and conservative. *Danielsson v. Blood Centers of Pac.*, No. 19-CV-04592-JCS, 2019 WL 7290476, at *6 (N.D. Cal. Dec. 30, 2019); *Chavez v. Pratt (Robert Mann Packaging), LLC*, No. 19-CV-00719-NC, 2019 WL 1501576, at *3 (N.D. Cal. Apr. 5, 2019) (finding that a 20% violation rate for meal and rest period was reasonable where the plaintiff alleged a "pattern or practice" of violations); *Mendoza v. Savage Servs. Corp.*, No. 2:19-CV-00122-RGK-MAA, 2019 WL 1260629, at *2 (C.D. Cal. Mar. 19, 2019) (finding that a 20% violation rate for meal and rest breaks was reasonable where the complaint alleged a "pattern and practice" of violations, and noting that courts in the Central District of California "routinely apply a 20% violation rate . . . for meal and rest period premiums" and citing cases).

47.    Based on a review of Defendant's business records, the putative class members worked at least 260,258 shifts lasting six hours or longer between April 25, 2020 and April 28, 2024. (Chiang Decl., ¶ 13.) The average base hourly rate of the putative class members was at least $19.75 per hour during this period. (*Id.* at ¶ 7.)

48.    Defendant conservatively estimates that the amount placed into controversy by Plaintiff's claim for failure to provide legally compliant meal periods is at least $1,038,950 (20% x $19.96 per hour x one hour premium pay x 260,258 shifts). The computation of the amount in controversy is based on conservative estimate that there was a meal break violation during 20% of the 260,258 meal-break eligible shifts (52,051.6 shifts), and that the putative class members earned an average base hourly rate of pay of at least $19.96 per hour during the relevant period. (Chiang Decl., ¶ 14.)

DEFENDANT APL LOGISTICS WAREHOUSE MANAGEMENT SERVICES, INC.'S NOTICE OF REMOVAL OF CIVIL ACTION TO FEDERAL COURT

49. Defendant denies that any such meal period premium pay is owed to Plaintiff or putative class members. However, for purposes of this jurisdictional analysis only, Defendant relies on Plaintiff's allegations that the premium pay is owed.

50. **Consequently, Defendant applied a reasonable violation rate to place the amount in controversy by Plaintiff's claim for failure to provide legally compliant meal periods to be at least $1,038,950.**

### 5. Rest Period Penalties

51. In his Third Cause of Action, Plaintiff alleges that Defendants failed to provide Plaintiff and putative class members rest periods as required by Cal. Labor Code § 226.7. (Complaint ¶¶ 75-83.) Plaintiff alleges that "Defendant[] engaged in a pattern and practice of . . . failing to pay [Plaintiff and other putative class members] for . . . missed [] rest breaks." (*Id*.¶ 29.) Plaintiff specifically alleges that "Defendants required Plaintiff and other class members to work four (4) or more hours without authorizing or permitting a ten (10) minute rest period per each four (4) hour period worked." (*Id.* at ¶ 79.) Plaintiff further alleges "Defendants willfully required Plaintiff and the other class members to work during rest periods and failed to pay Plaintiff and the other class members the full rest period premium for work performed during rest periods." (*Id.* at ¶ 80.) As such, Plaintiff's allegation is that Defendant's implemented policy and practices resulted in class-wide failure to authorize and permit rest breaks and pay rest break premiums.

52. Under California law, employers must provide at least one 10-minute rest period for shifts 3.5 hours or greater. *Brinker Rest. Corp. v. Super. Ct.*, 53 Cal. 4th 1004, 1029 (2012). Employees who are not provided the opportunity to take a rest period are entitled to one hour of premium pay for each day that the opportunity to take a rest period is not provided. *United Parcel Serv. Wage & Hour Cases*, 196 Cal. App. 4th 57, 63 (2011). Rest period claims are properly considered in determining the amount in controversy. S*ee, e.g., Olson v. Becton, Dickinson & Co.*, 19-cv-865-MMA, 2019 WL 4673329, *4-5 (S.D. Cal. Sept. 25, 2019); *Arias v. Residence Inn by Marriott*, 936 F.3d 920, 926-27 (9th Cir. 2019).

53. As with meal period violations, an estimated 20% violation rate is both reasonable and conservative where, as here, Plaintiff contends that Defendant's policies and procedures were to

not provide employees with legally compliant breaks and to not pay employees one hour of pay at the employees' regular rate of pay. Complaint ¶¶ 72-73; *Danielsson*, 2019 WL 7290476, at *6; *Chavez*, 2019 WL 1501576, at *3; *Mendoza*, 2019 WL 1260629, at *2.

54. Based on a review of Defendant's business records, the putative class members worked at least 272,065 shifts at or exceeding 3.5 hours in length between April 25, 2020 and April 28, 2024. (Chiang Decl., ¶ 15.)

55. Defendant conservatively estimates that the amount placed into controversy by Plaintiff's claim for failure to provide legally compliant rest periods is at least $1,086,083 (20% x $19.96/hour x one hour premium pay x 272,065 shifts). The computation of the amount in controversy is based on conservative estimate that there was a rest break violation for 20% of the 272,065 shifts that were eligible for at least one rest break (54,413 shifts), and that the putative class members earned an average base hourly rate of pay of at least $19.96 per hour during the relevant period. (Chiang Decl., ¶ 16.)

56. Defendant denies that any such rest break premium pay is owed to Plaintiff or putative class members. However, for purposes of this jurisdictional analysis only, Defendant relies on Plaintiff's allegations that the premium pay is owed.

57. **Consequently, the amount placed in controversy by the rest break claim is at least $1,086,083.**

### 6.       Waiting Time Penalty Claim

58. In his Fifth Cause of Action, Plaintiff seeks penalties under California Labor Code § 203 for failure to timely pay wages due at termination. (Complaint ¶¶ 90-95). Specifically, Plaintiff alleges that "[d]uring the relevant time period, Defendant[] intentionally and willfully failed to pay Plaintiff and the other class members who are no longer employed by Defendant[] their wages, earned and unpaid, within seventy-two (72) hours of their leaving Defendant[]'s employ." (*Id.* at ¶ 92.)

59. As a result, Plaintiff alleges that he and the proposed class members are entitled to recover penalties pursuant to California Labor Code § 203. (Complaint ¶ 95.) An employer that willfully fails to pay all wages due at termination within the required time is subject to a penalty whereby the employee's wages continue to accrue for up to 30 days from the due date until back

14                                    Case No.

wages are paid or an action is commenced. Cal. Lab. Code § 203.

60.     The applicable statute of limitations for a claim seeking Labor Code section 203 penalties is three years (from April 25, 2021 to the present). Cal. Lab. Code § 203; Cal. Civ. Proc. Code § 338.

61.     The Complaint does not allege the number of violations that occurred between April 25, 2021 and the present. Instead, Plaintiff alleges that Defendant intentionally and willfully failed to pay Plaintiff and the other class members who are no longer employed by Defendant their wage due at termination. (Complaint ¶ 92.) Additionally, Plaintiff relies on his other allegations to support his claim that he and the proposed class members did not receive all wages owed to them upon termination. (*See, e.g*., *Id*. ¶¶ 29, 31, 33-34, 61, 72, 80.) If Plaintiff's other claims are found to be true, all class members terminated more than thirty (30) days ago are entitled to 30 days' waiting period wages under Labor Code section 203.

62.     Plaintiff and other putative class members would be owed 240 hours of additional compensation at their hourly rate of pay – the equivalent of 30 days' of work. *See Soto v. Tech Packaging, Inc*., 2019 WL 6492245, at *8 (finding "reasonable" defendant's assumption that putative class members did not receive final wages for the full 30-day period under which penalties may accrue."); *Long v. Destination Maternity Corp*., 2016 WL 1604968, at *9 (S.D. Cal. Apr. 21, 2016) (finding that Defendant's assumption that final wages went unpaid for the full thirty days is reasonable where plaintiff alleges that defendant failed to pay final wages and still had not paid plaintiff all wages).

63.     A three-year statutory period applies to Plaintiff's claim for waiting time penalties. *Pineda v. Bank of Am., N.A*., 50 Cal.4th 1389, 1398 (2010).

64.     As set forth in *Bolton v. U.S. Nursing Corp*., No. C 12–04466 LB, 2012 WL 5269738, at *5, (N.D. Cal. Oct. 23, 2012), an employer may establish the amount in controversy for a waiting time penalty claim pursuant to California Labor Code Section 203 by: (1) assessing a minimum hourly rate based on the regular rate applicable to the putative class; (2) multiplying the hourly rate by the average hours worked per shift; (3) multiplying that number by the number of days in the waiting time period; and (4) multiplying that number by the number of terminated putative class members.

65.     Based on a review of Defendant's records, from April 25, 2021 through April 28, 2024, there were at least 362 employees who separated from Defendant. (Chiang Decl., ¶¶ 8, 20; Ciotti Decl., ¶ 8.) Plaintiff and putative class members regularly worked 8 hour shifts and the average hour per shift for these 362 putative class members is 8.67 hours. (Chiang Decl., ¶ 9 n. 2.) Plaintiff alleges he and other putative class members "worked in excess of eight (8) hours in a day, and/or in excess of forty (40) hours in a week." (Complaint ¶ 60.) Using the average base hourly rate of pay of $19.96, the amount placed in controversy for waiting time penalties is at least $1,879,358 (calculated as 362 terminated putative class members x 30 days per employee x 8.67 hours per day x $19.96 per hour). (Chiang Decl., ¶ 20.)

66.     Defendant denies that any such penalties are owed to Plaintiff or putative class members. However, for purposes of this jurisdictional analysis *only*, Defendant relies on Plaintiff's allegations that the penalties are owed.

67.     **Consequently, the amount placed in controversy by Plaintiff's Waiting Time Penalty Claim is at least $1,879,358**.

### 7.     Labor Code Section 204 Claim

68.     In his Sixth Cause of Action, Plaintiff alleges that "Defendants have intentionally and willfully failed to pay Plaintiff and the other class members all wages due to them, within any time period permissible under California Labor Code section 204." (Complaint ¶ 100.) Plaintiff further alleges that he and the other class members "are entitled to recover all remedies available for violations of California Labor Code section 204." (*Id*. ¶ 101.) California Labor Code section 210 provides for a recovery of one hundred dollars ($100) for the initial violation of California Labor Code section 204 and two hundred dollars ($200) for each subsequent violation. Cal. Labor Code § 210.

69.     The statute of limitations for a claim for penalties for violations of Labor Code Section 204 under Labor Code Section 210 is one year. Cal. Civ. Proc. Code § 340(a).

70.     Between April 25, 2023 to April 28, 2024, Defendant paid its California hourly non-exempt employees weekly and has issued these employees wage statements each weekly pay period. (Ciotti Decl., ¶ 9.) Based on a review of Defendant's business records, Defendant employed 369 putative class members who were issued a total of 14,493 wage statements for the applicable pay

DEFENDANT APL LOGISTICS WAREHOUSE MANAGEMENT SERVICES, INC.'S NOTICE OF REMOVAL OF CIVIL ACTION TO FEDERAL COURT

periods during the one year limitations period between April 25, 2023 and April 28, 2024. (Chiang Decl. ¶ 21; Ciotti Decl. ¶ 9 (weekly pay periods).)

71.     Assuming, *arguendo*, the truth of Plaintiff's *unqualified allegations* that wages were paid untimely in violation of Labor Code Section 204 during the putative class period, putative class members are entitled to recover $2,861,700 in penalties, calculated as: 369 first pay periods x $100 per first pay period + 14,124 subsequent pay periods (= 14,493 total pay periods – 362 first pay periods) x $200 per subsequent pay period.

72.     Plaintiff contends that Defendant owes these penalties because, "[d]uring the relevant time period, Defendants intentionally and willfully failed to pay Plaintiff and the other class members all wages due to them, within any time period permissible under California Labor Code section 204." (Complaint ¶ 100.) Significantly, Plaintiff's allegations concerning Labor Code 204 violations that the putative class members allegedly suffered are not qualified in any manner, *e.g*., by alleging that they "sometimes" or "occasionally" or "often" were paid their wages outside the time period allowed by Labor Code 204. Rather, as detailed above, Plaintiff alleges – *without qualification* – that it was the policy and practice of Defendant to regularly pay late. These broad, unqualified allegations concerning Labor Code 204 violations justify an assumption of a 100% percent violation rate.

73.     **Consequently, the amount placed in controversy by Plaintiff's Labor Code Section 204 Claim is at least $2,861,700.**

### 8.     Wage Statement Claim

74.     In his Seventh Cause of Action, Plaintiff claims that "Defendants have intentionally and willfully failed to provide Plaintiff and the other class members with complete and accurate wage statements . . . [t]he deficiencies include, but are not limited to: the failure to include the number of hours worked by Plaintiff and the other class members." (Complaint ¶ 104.) Plaintiff claims that Plaintiff and the putative class have been injured by Defendant's allegedly "intentional and willful violation of California Labor Code § 226(a)." *Id.* ¶¶ 105, 106. On behalf of himself and the putative class, Plaintiff seeks to recover "the greater of their actual damages caused by Defendants' failure to comply with California Labor Code § 226(a), or an aggregate penalty not exceeding four thousand dollars ($4,000) per employee." (*Id.* ¶ 107.)

75. Under California Labor Code section 226, "[a]n employee suffering injury as a result of a knowing and intentional failure by an employer to comply with subdivision (a) is entitled to recover the greater of all actual damages or fifty dollars ($50) for the initial pay period in which a violation occurs and one hundred dollars ($100) per employee for each violation in a subsequent pay period, not to exceed an aggregate penalty of four thousand dollars ($4,000)." Lab. Code § 226(e).

76. Where, as here, Plaintiff alleges widespread wage statement violations among the putative class members during the liability period, courts have held it is reasonable to assume a 100% violation rate for purposes of removal. *See, e.g.*, *Baker v. Propak Logistics*, Inc., No. EDCV 19-1241 (JGB) (SHKx), 2019 WL 4168998, at *4 (C.D. Cal. Sept. 3, 2019); *Mendoza v. Nat'l Vision, Inc.*, No. 19-cv-01485-SVK, 2019 WL 2929745, at *6 (N.D. Cal. July 8, 2019) (approving a 100% wage statement violation rate where plaintiff's complaint alleged that "throughout the relevant period," the defendant "issued "wage statements [that] inaccurately report the number of hours worked, the number of overtime hours worked, gross wages earned, net wages earned and deductions"); *Gipson v. Champion Home Builders, Inc.*, No. 1:20-cv-00392-DAD-SKO, 2020 WL 4048503, at *8 (E.D. Cal. July 20, 2020) (100% violation rate was reasonable based on assumption that class members suffered at least one meal or rest break violation each pay period).

77. Between April 25, 2023 to April 28, 2024, Defendant paid its California hourly non-exempt employees weekly and has issued these employees wage statements each weekly pay period. (Ciotti Decl., ¶ 9.) Between April 25, 2023 and April 28, 2024, Defendant employed 369 putative class members who were issued a total of 11,932 wage statements (*i.e*., 11,932 aggregate pay periods). (Chiang Decl. ¶ 22.) Accordingly, Plaintiff's wage statement claim places at least $1,162,500 in controversy, calculated as 369 first pay periods x $50 per first pay period + 245 41st pay period + 11,318 subsequent pay periods (= 11,932 total pay periods – 369 first pay periods – 245 41st pay periods) x $100 per subsequent pay period. (*See id*.)

78. Defendant denies that any such penalties are owed to Plaintiff or putative class members. However, for purposes of this jurisdictional analysis only, Defendant relies on Plaintiff's allegations that the penalties are owed.

79. **Consequently, the amount placed in controversy by Plaintiff's Wage Statement**

**Claim is at least $1,162,500.**

### 9.    Attorney's Fees

80.    Plaintiff also explicitly seeks attorneys' fees should he recover for his claims in this action. (*See* Complaint ¶¶ 63, 87, 125, and Prayer for Relief.) Prospective attorneys' fees are properly included in the amount in controversy for purposes of evaluating CAFA jurisdiction. *See Arias*, 936 F.3d at 922 ("[W]hen a statute or contract provides for the recovery of attorneys' fees, prospective attorneys' fees must be included in the assessment of the amount in controversy."); *see also Fritsch v. Swift Transp. Co. of Ariz., LLC*, 899 F.3d 785, 796 (9th Cir. 2018) (citing *Kirby v. Immoos Fire Prot., Inc*. (2012) 53 Cal.4th 1244, 1255) (the attorneys' fees shifting provisions in Labor Code §§ 218.5 and 1194 to not apply to legal work relating to meal and rest break claims). Under the Ninth Circuit's well-established precedent, 25% of the common fund is generally used as a benchmark for an award of attorneys' fees. *See Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1029 (9th Cir. 1998); *Barcia v. Contain-A-Way, Inc.*, No. 07cv938–IEG–JMA, 2009 WL 587844, at *5 (S.D. Cal. Mar. 6, 2009) ("In wage and hour cases, '[t]wenty-five percent is considered a benchmark for attorneys' fees in common fund cases.'").

81.    Here, Defendant has established that the total amount in controversy for the portion of Plaintiff's claims included herein is at least $9,266,135, and Plaintiff has not indicated that he will seek less than 25% of a common fund in attorneys' fees. (*See* Complaint ¶¶ 63, 87, 125, and Prayer for Relief (seeking attorneys' fees).) Although Defendant has shown that the amount in controversy absent attorneys' fees surpasses the jurisdictional threshold, this Court should nevertheless include the potential attorneys' fees award in evaluating jurisdiction. *Arias*, 936 F.3d at 922. Defendant denies that any such attorneys' fees are owed to counsel for Plaintiff or putative class members. However, for purposes of this jurisdictional analysis *only*, Defendant relies on Plaintiff's allegations that the attorneys' fees are owed.

82.    Using a conservative 25% benchmark figure for attorneys' fees for the portion of Plaintiff's claims included herein results in estimated attorneys' fees of at least approximately

Case No.

DEFENDANT APL LOGISTICS WAREHOUSE MANAGEMENT SERVICES, INC.'S NOTICE OF REMOVAL OF CIVIL ACTION TO FEDERAL COURT

$2,636,634, calculated as follows:[2]

| Conservative Estimate of Amount in Controversy from Plaintiff's Claims Included Herein: | $9,266,135 |
|---|---|
| Attorneys' Fees Benchmark: | 25% |
| Attorneys' Fees: | $2,316,534 |

## 10.    **Summary of Amount in Controversy**

83.    In summary, as described above, a reasonable and conservative estimate of the amount in controversy presented by Plaintiff's claims included herein exceeds $5,000,000. Indeed, these six claims plus attorneys' fees alone have placed at least $11,582,669 in controversy, as follows:

| **Claim** | **Estimated Exposure** |
|---|---|
| Minimum Wage Claim | **$907,736** |
| Overtime Premium Claim | **$328,808** |
| Meal Period Claim | **$1,038,950** |
| Rest Period Claim | **$1,086,083** |
| Waiting Time Penalties Claim | **$1,879,358** |
| Labor Code Section 204 Claim | **$2,861,700** |
| Sub-Total | **$9,266,135** |
| 25% Attorneys' Fees | **$2,316,534** |
| **TOTAL** | **$11,582,669** |

---

[2] In calculating estimated alleged attorneys' fees, Defendant excluded the estimated amounts in controversy for alleged unpaid business expenses and failure to maintain records violations. The calculation for attorneys' fees is actually higher than the conservative estimate calculated here because Plaintiff alleges he is entitled to attorneys' fees for the failure to reimburse business expenses claim.

84. Consequently, the amount placed in controversy by Plaintiff's claims exceeds the $5,000,000 jurisdictional threshold of 28 U.S.C. § 1332(d), and removal to this Court is proper under CAFA. Consequently, even if the Court applies a conservative and limited review of Plaintiff's Complaint, it is clear that the amount in controversy requirement is met.

**IV.     VENUE IS PROPER**

85. In accordance with 28 U.S.C. § 1446(a), this Notice of Removal is filed in the District in which the action is pending. The Superior Court of the State of California for the County of San Joaquin is located within the Eastern District of California. Therefore, venue is proper in this Court because it is the "district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a).

**V.     SATISFACTION OF REQUIREMENTS OF 28 U.S.C. § 1446**

86. As discussed above, Plaintiff served Defendant with a copy of the Complaint, which is attached to the Notice of Removal as **Exhibit A**. Additional documents served on Defendant's agent of service and Counsel in connection with the Action include the Summons, Civil Case Cover Sheet; Notice of Case Assignment and Notice of Hearing. A true and correct copy of these documents is attached as **Exhibit D** to the Notice of Removal. (*See also* Palmer Decl., ¶ 6.) In accordance with 28 U.S.C. § 1446(a), copies of all process, pleadings, and orders served upon Defendant are attached as Exhibits to this Notice.

87. In accordance with 28 U.S.C. § 1446(d), a copy of this Notice is being served upon counsel for Plaintiff, and a notice will be filed with the Clerk of the Superior Court of California for the County of San Joaquin. Notice of compliance shall be filed promptly afterward with this Court.

88. As required by Federal Rule of Civil Procedure 7.1, Defendant concurrently filed its Corporate Disclosure Statement.

89. Finally, in the event this Court has any question regarding the propriety of this Notice of Removal, Defendant requests that the Court issue an Order to Show Cause so that Defendants may have an opportunity to more fully brief the basis for this removal.

/ / /

/ / /

DEFENDANT APL LOGISTICS WAREHOUSE MANAGEMENT SERVICES, INC.'S NOTICE OF REMOVAL OF CIVIL ACTION TO FEDERAL COURT

WHEREFORE, Defendant removes the above-captioned action to the United States District Court for the Eastern District of California.

DATED:  August 27, 2024

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.

By:  /s/ Jared L. Palmer

JARED L. PALMER
CAROLYN B. HALL
ETHAN LAI
RICARDO R. BOURS

Attorneys for Defendant
APL LOGISTICS WAREHOUSE
MANAGEMENT SERVICES, INC.

22                          Case No.

DEFENDANT APL LOGISTICS WAREHOUSE MANAGEMENT SERVICES, INC.'S NOTICE OF REMOVAL OF CIVIL ACTION TO FEDERAL COURT